LESSEE OF C. SMITH AND OTHERS *v.* GEORGE W. JONES.

A will, made in May, 1811; operated as a devise of a lot, which the devisor was in possession of, at the time of making the will, on a verbal contract of purchase, and for which he subsequently took a deed in his lifetime.

THIS was a motion for a new trial, in an action of ejectment, the jury having, under the instruction of the court, returned a verdict

for the defendant. The case was this: The lessors of the plaintiff claimed, as heirs at law to their father, a lot in Cincinnati, con- veyed to him by Joel Williams, on May 26, 1812. The defendants claimed, under a will duly executed, dated July 25, 1811. The defendant also gave evidence that the testator, Smith, was in pos- session of the lot, under a verbal contract of purchase, and com- menced improvements upon it anterior to July, 1811, the date of the will. It was also in proof, that on September 9, 1811, the testator entered into a written agreement with Joel Williams for the purchase of the lot, in completion of which the deed was subse- quently made.

The court instructed the jury that if they were satisfied, from the proof, that the testator was in possession, under a verbal con- tract of purchase, at the time of making the will, the devise was operative, and the defendant entitled to a *verdict. Under [116 this instruction the jury found for the defendant, adding that they found that the testator was in possession, upon a verbal contract of purchase, when the will was made. The motion for a new trial was made on the ground that the court erred in the instruc- tion given, and the decision of this motion was adjourned here by the Supreme Court in Hamilton county.

BENHAM and FINLEY, for plaintiff:

Two points arise out of this case: 1. Whether a devise of the testator's real estate, which he holds by verbal contract merely, at the time of executing his will, is valid?

2. If the will does operate to pass lands, held merely by parol contract, and subsequently to executing the will the testator ac- quires legal title to the premises, and dies, does the *legal title* pass to the devisee, or does it descend to the heir at law, in trust for the devisee?

As to the first point, it is a well-settled principle, that the devisor should be seized in fee at *the time of making his will.* Rep. 246. If, therefore, the testator demise all his lands, and afterward pur- chase other lands, and die without making a new will, or repub- lishing his former will, such after-purchased lands will not pass; and this rule is so rigid that a devise will not pass lands specific- ally mentioned in it, and intended to be devised. Roberts on Wills, 227; 9 Johns. 312; 3 Johns. Ch. 307, 362; 5 Munf. 272, 342; 8 Cranch, 66. In the case of Arthur *v.* Bokenham, Rep. 750,

Lord Chief Justice Trevor lays down the doctrine in the broadest terms, that if the devisor was not owner of the land when the will was made it did not pass.

In the case of Harwood, Coup. 90, it is laid down "that a devise is an appointment of particular lands to a particular devisee, and is considered as being in the nature of a conveyance, by way of appointment; upon which principle it is, that no man can devise lands which he has not at the date of such conveyance; and this principle does not turn upon the construction of the statute of Henry VIII., which says " that any person having lands, etc., may devise, for the same rule held before the statute, where lands were devisable by custom. It is upon the same principle there have 117] been \*revocations determined contrary to the intent of the testator." The case of Acale *v.* Roberts, 3 Burr. 1457, recognizes the same principles.

The testator in the present case having a mere naked possession of the premises at the time of making his will, had no title, either in law or equity, on which the devise could operate, for it can not be contended that a mere verbal contract for lands confers any title, even if the grantee should take possession under such contract, unless he should have made extensive improvements, paid the purchase money, etc., which does not appear from the verdict to have been the case; nor was it necessary according to the charge of the court they should so find.

The testator having subsequently to the demise, articled to purchase the premises, and then acquired the legal title, can not extend the demise back by relation to embrace the land; because *relation* never operates to make an act good which was void for defect of power. Vent. 304; 3 Rep. 29.

It is admitted that when lands contracted for are devised, such devise will be held good in equity. But there must be express articles, or a positive agreement, binding within the statute of frauds, entered into and completed before the execution of the will; otherwise the estate will not pass. Longford *v.* Pitt, 2 P. Wms.

But it is contended by the defendant that, by the statute in force at the time of making the will, the land passed by it, although acquired subsequent to its execution. The statute then in force was taken from the Virginia code, and authorized every person aged twenty-one years, etc., " at his will and pleasure, by last will

and testament in writing, to devise all the estate, right, title, and interest in possession, reversion, or remainder, which he hath, or at the time of his death shall have, of, in, or to lands," etc. But in order that lands acquired after the date of the will may pass by it under this statute, it is necessary that the intention of the testator to pass them should clearly appear on the face of the will. 3 V. C. 66. The court in that case say, " that the rule in England, as well as Virginia, at the time of the passage of the law, was, that a will as to land speaks at the date of it; and as to personal estate speaks at the time of the testator's death. The law created no new or different rule of construction, *but merely gave a [118 power to the testator to devise lands which he might possess, or be entitled to at the time of his death, if it should be his pleasure to do so. The presumption is, that the testator means to confine his bequest to land to which he is then entitled; and this presumption can only be overruled by words clearly showing a contrary intention."

In the case of Hamersby *v.* ———, 3 Call, 289, it is said that the intention to pass after-acquired lands must appear by expressions applicable to that kind of property.


Fox, for defendant:

The first question presented by the verdict is, whether a devise, made of real estate, on July 25, 1811, by a man who then had only an equitable estate, but who afterward obtained the legal title before he died, will carry such a title to the devisees, and those claiming under them, as will bar a recovery, by the heirs at law of the devisor.

The statute in force at the date of this will may be found in vol. viii. 149. By the provisions of this act, a man " may devise all the estate, right, title, and *interest* in *possession,* reversion, or remainder, which he hath, or *at the time of his death shall have,* of, in, or to lands, tenements," etc. From the plain reading of this act, it appears to me perfectly clear that the will made in this instance passed not only what interest Smith had at the making of the will, but, also, all such interest, as, *at the time of his death, he should have.*

The statute is differently worded from the act of 32 Henry VIII., cap. 1. This difference of phraseology must produce a different construction of the act. I admit it to be well settled in England,.

that a devise of land passes only such land as the devisor had at the time of making the will; in other words, that lands acquired subsequent to the making of the will do not pass by the will. The law is otherwise, however, even in England, with respect to personal property. The will, it is said, speaks from the time of making, so far as real estate is concerned; and it speaks only from the death of the devisor in cases of personalty. Whether the reasons given for the distinction are sound, or unsound, is not very material. It is sufficient to say that the statute of Henry VIII. 119] *does not authorize a person to devise lands which he hath, or, *at the time of his death, may have.* The statute of Ohio, in force at the making of this will, did authorize such a devise. And as such a devise is held good in England, so far as personal estate is concerned, I can see no reason why the same construction should not be given to a devise of real estate where the statute authorizes such a will to be made. If the devise was *confined* to a particular piece of real estate, subsequently acquired land could not pass, because it would be evident that such could not have been the testator's intention. But where a man devises all his property, without designating any particular piece, and the law says he may devise, not only what he has, but all which at the time of his death he may have, we must construe the will to cover all the land he may have at the time of his death.

But if the court should be of opinion that the will now before the court would not pass lands purchased by Charles Smith, after making his will, still I contend that inasmuch as Smith had purchased this land before making his will, he had at the time of making the will an interest, which he passed by the will, and that the legal title, subsequently acquired, related back to the time of the original purchase.

It will not be denied, I presume, that an equitable title may be devised. The statute enables a man to devise any possible interest which he may have at the time of making his will, either in possession, reversion, or remainder.

The English and American authorities are also full and satisfactory upon the effect of devising an equitable estate. 10 Vesey. 613, 614; 2 Ch. Cas. 144; 1 Id. 39; 3 Johns. Ch. 316. And so far is this doctrine carried, that the devisee is entitled to call upon the executors to pay the purchase money due on the estate purchased. 10 Ves. 614, 605, 610; 3 Johns. Ch. 316. There are not

many cases to be found at law where this question has been decided; there is one very analogous case which, I think, is conclusive upon this case. Prior to the statute of uses, a man having the use, or beneficial interest in an estate, had nothing more than an equitable estate; and it was decided at law that where a man, having the use only, devised the same, and afterward the statute having passed, it vested the legal title in the *cestui que use*, who died, and it was held that the devisee had *the legal title [120· vested in him. 1 Roll. Abr. 616, pl. 3. In Bridges *v.* Duchess of Chandos, 2 Vesey, jr. 429, the lord chancellor, remarking upon this case, says, "that is exactly the case of an equitable estate devised, and a conveyance taken afterward of the legal estate; and this court was so far from determining without considering what the rule of law would be, that here is the very point decided by a court of law."

In Selwyn *v.* Selwyn, 2 Burr. 1135, it appears the father and son executed a bargain and sale to a third person, to make him a tenant to the precipe for suffering a common recovery, the uses of which were to be for the father for life, remainder to the son in fee. After the writ was sued out, and before the recovery suffered, the son makes a will and devises the land in fee, and dies after the recovery was completed, without altering the will. The question was, whether the will conveyed the land. It is perfectly clear that at the time of making the will the son had only an equity. It is also clear that by the subsequent recovery he was vested with the legal title. The court held that the title to the land passed by the will; and though the court gave no reasons for their decisions, the reporter supposes, "they considered the whole as one conveyance, which must relate to the date of the bargain and sale; which was perfected, made absolute, and delivered from objections by the subsequent ceremonies." And Lord Mansfield, in Roe and Norden *v.* Griffiths, 1 Black. 605, in referring to the case of Selwyn *v.* Selwyn, places the decision on the same ground.

So also in the case of a surrender of a copyhold estate, although the surrenderee has no estate in the premises surrendered until his admission, yet, on being admitted, he is in by relation to the surrender, from which date his admission operates; and in declaring in ejectment he can lay his demise immediately from the surrender. 1 Term, 600.

The principle, indeed, appears to be universal that where divers.

acts go to constitute a conveyance, estate, or thing, the original act is to be preferred, and to this original act all others have relation.

Thus in Heath and another v. Ross, 12 Johns. 140, a patent was dated December 4, 1810, but did not pass the great seal until the 121] 28th of the same month. During the period *between the 4th and 28th, a quantity of timber was cut by the defendants, and it was held that no title passed until the patent was delivered, yet after delivery the title related back to the 4th December, and the defendants were held liable.

So in Jackson v. Dickenson, 15 Johns. 309, a purchase was made at sheriff's sale, March 1, and the deed not delivered until March 19, and yet the court held the deed good, by relation, from March 1, and thereby prevented a bill in chancery, filed March 13, from operating as a *lis pendens*, so as to affect the purchaser by the decree rendered. The court recognize the doctrine distinctly and fully, that " the time to which the grant is to relate, is the time when the bargain or contract for the sale and purchase of the land was finally concluded between the grantor and grantee." Id. 316.

Again, in Demarest and wife v. Wynkoop et al., 3 Johns. Ch. 146, a deed, made nineteen years after a sale, was held to relate back to the purchase.

The same doctrine is recognized in 7 Mass. 381, and 1 Johns. Cas. 81, 85.

By the COURT:

The statute of Ohio is much more comprehensive in its terms than those of 32 and 34 Henry VIII. " Every male person aged twenty-one years, or upward, being of sound mind, shall have power at his or her will and pleasure, by last will and testament, to devise all the estate, right, title, and interest, in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, in, or to, lands, tenements, hereditaments, annuities, or rents charged upon, or issuing out of them. 6 Ohio L. 64.

The third section provides for the revocation of wills, in the details of which, an alteration of the estate, after making and publishing the will, is not mentioned.

A prominent feature of the English law is to favor the heir, and prevent disinherison. This has introduced the fixed principle

that at the inception of the will a man must be seized of the estate he devises, which should remain unaltered to the time of its consummation by his death. Pow. on Dev. 566. The difference in circumstances has, with us, *led to a difference in [122 legislation, and cases may arise in which our courts may, with great propriety, depart, in their judicial decisions, from those of England, upon questions arising out of wills. The laws of the various states show that it is the general policy of the government, that estates should not accumulate in families, or succeed in perpetuity. This is universally supposed to be the most effectual way to guard from degeneracy and destruction our free and equal institutions. Notwithstanding this solicitude in favor of the heir which is manifested in the course of decisions in that country, it has been held that when a devise is made in general words, it will carry the estate both in law and equity. 1 Ves. 437. So any contract which a court of equity would enforce on an application for a specific performance, would be sufficient to pass under sweeping words in a will. 1 Ves. 437, 494; Pow. on Dev. 208. But such contract must exist at the time of making the will, because one having no title whatever can devise nothing. 2 P. Wms. 629. It has also been decided that if a man devise all his lands for the payment of his debts, and afterward purchase lands, although there were no articles of agreement previous to the will, a sale will be decreed of those after-purchased lands. 2 Ch. Cas. 144. It appears to be the settled law in England, that an equity may be devised, and if a deed is not executed during the life of the testator, the obligor will be held a trustee for the devisor, and may compel an execution of the articles for his benefit. If the testator may pass equitable interests in land, by will, in England, there can be no doubt he may do it under the more comprehensive terms of our statute. In this case no doubt can exist as to the intention of the testator. The words embrace his whole estate. It is beyond controversy that whatever interest the testator had in this land, when the will was made and published, passed to Agnes Smith, his wife.

The question more difficult, is, whether getting in the legal estate before his death, and after the execution of the will, amounts to a revocation, and whether the legal estate so obtained, passed by the will, or descends to the heir.

In the case of Rex, ex dem. Norden, *v.* Griffiths and others, it

111

was held that an admittance would refer back to a surrender, being only a completion of it. 4 Burr. 1952.

**123]** *In Selwin *v.* Selwin, 2 Burr. 1131, the principle was decided that the whole of a conveyance shall be taken together, and the several parts of it shall have relation back to the principal part. S., being seized in fee by indenture of lease and release, conveyed to uses and covenanted to levy a fine. All were adjudged an assurance. 2 Bur. 704. Mr. Justice Wimot: "He considered these deeds as a covenant to levy a fine, and they ought, with the fine, to be considered as one and the same assurance." The same principle was decided in Croke Ja. 643. All the court held that a bargain and sale, and the fine and recovery, are but one assurance, and, says the court: "The recovery being executed, which is grounded upon the covenant, is *quasi* a conveyance to the use *ab initio*." 2 Ves. 681. These cases are deemed analogous in principle to the one under consideration. The equity which existed at the time of making the will clearly passed, and the conveyance to the devisor is no change of the estate to work a revocation, but rather a confirmation of it.

For the purpose of protecting the devisee, it would but conform to the authorities to hold the legal conveyance accepted by the testator, posterior to the execution of the will, as an act of confirmation on his part, and to consider them both as one assurance. It can not be doubted if the testator had refused to accept the deed in his lifetime, the right would have been complete in the devisee, and she could have compelled a specific performance of the contract. The principles involved in this case were decided in Gist's Heirs *v.* Robinet, 3 Bibb, 2. The case was this: Under the royal proclamation of 1763, Thomas Gist, for military services in the war with Great Britain and France, became entitled to a grant of two thousand acres of land, upon his personal application to any of the governors of the colonies of North America. In 1772, before he applied for his claim, he made and published his will, by which he devised to his sister, Anne Gist, one moiety of his whole estate, both real and personal; the other moiety he gave to Elizabeth Johnson. He afterward obtained a warrant, caused it to be surveyed, and in January, 1780, obtained a grant. He died in 1785, without altering or republishing his will, leaving Nathaniel Gist his heir at law. Anne Gist conveyed to Nathaniel Gist, in fee, a moiety of the tract of land; Nathaniel died, leaving the les-

sors of *the plaintiff his heirs at law. The question was, [124 whether Thomas Gist, at the time of making his will, had such an interest, under the proclamation of 1763, as was transmissible by devise. The court lay down the doctrine as incontrovertible that an equity will pass by a devise. The judgment, which had been in favor of the plaintiff for a moiety only, was affirmed. The effect of this decision is, that when an equity existed at the time of publishing the will, and before the testator's death it was carried into grant, the equitable and legal estate could not be parted, but the latter attached to the former, so as to vest a complete estate in the devisee. If otherwise, the lessor of the plaintiff, who was heir at law of the testator, must have recovered the whole tract of land instead of the moiety, and turned the devisee of the other moiety to a court of chancery for relief. This defendant is the grantee of the devisee, and if the legal estate has descended to the heir at law of the testator, whatever equities may exist, the plaintiff is entitled to recover in this action. The cases before cited would appear, however, fully to warrant this court in considering the estate complete in the devisee in consequence of the will vesting the equity, and by reason that the legal estate was acquired by the testator before his death. To consider it in any other light would be separating the equitable and legal estate to no purpose, except to produce litigation and expense, or indulge in subtleties which have little to do with reason or justice. The court are therefore of opinion that the acceptance of a deed after the execution of the will is not an ademption of the legacy, and for the purpose of preventing circuity of action, the deed may be attached to the devise and considered but one assurance.

Judgment on the verdict.